**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

DARRYL PAYTON,  )
 )
                Plaintiff,  )   **CIVIL ACTION**
 )
v.  )   No. 11-3121-MLB
 )
CARREY MARLETTE, et al.,  )
 )
                Defendants.  )
 )

**MEMORANDUM AND ORDER**

This case comes before the court on defendants' motion to dismiss or, in the alternative, motion for summary judgment. (Doc. 35). The motion has been fully briefed and is ripe for decision. (Docs. 36, 40).[1] Defendants' motion is granted for the reasons herein.

**I.   Facts[2]**

Plaintiff Darryl Payton is currently incarcerated at the El Dorado Correctional Facility (EDCF). On November 30, 2009, plaintiff was issued a disciplinary report for using stimulants. Plaintiff pled guilty and was placed in segregation for 30 days. Upon his release, plaintiff was placed in the classification "lay-in cause" until

---

[1] Defendants did not file a reply brief and the time for filing has now passed.

[2] In his response, plaintiff makes no attempt to controvert defendants' statement of facts. Therefore, defendants' statement of facts is deemed uncontroverted. Additionally, plaintiff attached exhibits to his response regarding a grievance filed after plaintiff was denied employment in 2007. Plaintiff's complaint does not contain any allegations concerning events which occurred prior to late 2009. Therefore, the court has not considered these exhibits as they are not relevant.

September 17, 2010. Plaintiff was also placed in administrative segregation from May 21 through June 23, 2010.

On February 1, 2011, plaintiff was advised that visiting privileges for Valencia Rankins, plaintiff's daughter, could not be processed due to the lack of verification of their relationship. Rankins had provided her birth certificate to EDCF but it did not list plaintiff as her father. On February 14, Rankins wrote to the Secretary of Corrections, Ray Roberts, stating that the Unit Team Manager Maureen Malott was incorrectly interpreting prison policy regarding relationship verification. At some point, Rankins also contacted Kansas State Senator Oletha Faust-Goudeau about the denial of her visitation. On February 18, Deputy Warden Susan Gibreal informed Rankins that any documentation of family relationship would be accepted or that Rankins could be added to plaintiff's approved visitation list as a friend. On February 23, Faust-Goudeau called Gibreal to speak with her about the visitation policy. There is nothing in the record to indicate that Rankins has followed through with the required verification and plaintiff does not allege that he is being denied visitations by Rankins.

In early March 2011, plaintiff was interviewed for a position by Tommy McKay, a supervisor of Century Manufacturing at EDCF. On March 3, McKay sent an email to officer Schilta Pyles and Malott requesting to hire plaintiff. All requests concerning employment offers must be presented and approved by the Program Management Committee. Susan Gibreal and James Heimgartner, members of the committee, denied McKay's request to hire plaintiff. Plaintiff was informed of the denial on March 3. On March 21, plaintiff submitted

a grievance. On March 25, Malott stated that plaintiff's employment was denied due to his history of disciplinary actions and use of stimulants, both of which are supported by the record. Plaintiff appealed to the warden and Roberts. The decision was upheld on April 19. This series of events serves as the basis for all but one of the remaining claims. Liberally construed, plaintiff claims he was told by Malot he was denied the job because the senator contacted the prison about Rankins and that Malot, along with Gibreal, Heimgartner and Snyder "conspired" to retaliate against him for the senator's inquiry by denying him employment at Century Manufacturing. (Doc. 1, Counts III-VII, pp. 5-7).

On April 27, plaintiff filed a grievance concerning his relocation from one cell house to another. Prior to his move, plaintiff had requested that he be moved to a different cell house because of his allergic reaction to animals which were located in his cell house. Team members agreed to move plaintiff during a conference. However, plaintiff was not moved to the specific cell house that he requested. Plaintiff's grievance was denied as it was deemed an issue that was not grievable. (Id. at 7-8).

Defendants deny that they violated plaintiff's constitutional rights and assert that they are entitled to qualified immunity.

**II. Pro Se Status**

Before analyzing defendants' motion for summary judgment, the court notes plaintiff is not represented by counsel. It has long been the rule that pro se pleadings, including complaints and pleadings connected with summary judgment, must be liberally construed. See Hall v. Bellmon, 935 F.2d 1106, 1110 & n.3 (10th Cir.

1991); Hill v. Corrections Corp. of America, 14 F. Supp.2d 1235, 1237 (D. Kan. 1998). This rule requires the court to look beyond a failure to cite proper legal authority, confusion of legal theories, and poor syntax or sentence construction. See Hall, 935 F.2d at 1110. Liberal construction does not, however, require this court to assume the role of advocate for the pro se litigant. See id. Plaintiff is expected to construct his own arguments or theories and adhere to the same rules of procedure that govern any other litigant in this district. See id.; Hill, 14 F. Supp.2d at 1237. Additionally, the court need not accept as true plaintiff's conclusory allegations because no special legal training is required to recount the facts surrounding alleged injuries. See Hill, 14 F. Supp.2d at 1237. Thus, the court is required to accept as true only plaintiff's well-pleaded and supported factual contentions. See id. In the end, plaintiff's pro se status, in and of itself, does not prevent this court from granting summary judgment. See Northington v. Jackson, 973 F.2d 1518, 1521 (10th Cir. 1992).

**III. Summary Judgment Standard**

The rules applicable to the resolution of this case, now at the summary judgment stage, are well-known and are only briefly outlined here. Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists so that a rational trier of fact could resolve the issue either way and an issue is "material" if under the substantive law it is essential to the proper

disposition of the claim. <u>Adamson v. Multi Community Diversified Svcs., Inc.</u>, 514 F.3d 1136, 1145 (10th Cir. 2008). When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986). If so, the court cannot grant summary judgment. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

**IV. Analysis**

    **A. Lay-in Status (Count 1)**

In his first claim, plaintiff complains that defendant Marlette discriminated against him by retaining him in lay-in status due to his race or by either incorrectly applying the policy. Plaintiff's grievance, however, does not complain of race discrimination. Therefore, plaintiff has failed to exhaust his administrative remedies as to his discrimination claim. 42 U.S.C. § 1997e(a). Plaintiff has also failed to establish that Marlette incorrectly interpreted the policy. Defendants' motion for summary judgment on this claim is granted.

    **B. First Amendment Retaliation Claims (Counts 2-6)**

In Counts two through six, plaintiff alleges that defendants Marlette, Malot, Gibreal, Heimgartner and Snyder retaliated against him by denying an employment opportunity after plaintiff's daughter wrote a letter to a Kansas Senator. Defendants move for summary judgment on these claims on the basis of qualified immunity.

First, defendant Snyder moves for summary judgment on the basis

that he did not have any involvement with the decision to deny plaintiff's employment. A plaintiff must establish that each defendant had personal involvement in the alleged constitutional violation. Serna v. Colo. Dept. of Corr., 455 F.3d 1146, 1151 (10th Cir. 2006). Plaintiff has failed to do so. Therefore, defendant Snyder's motion for summary judgment is granted.

### 1. Constitutional Violation

Next, the remaining defendants contend that plaintiff has failed to establish a claim of retaliation because plaintiff was not engaged in the exercise of **his** constitutional rights. To establish a First Amendment retaliation claim, a plaintiff must show that "(1) he was engaged in constitutionally protected activity, (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the government's actions were substantially motivated as a response to his constitutionally protected conduct." Nielander v. Bd. of County Com'rs of County of Republic, Kan., 582 F.3d 1155, 1165 (10th Cir. 2009). Defendants contend that the first element cannot be met because plaintiff does not have standing to raise the violation of his daughter's constitutional rights.

In order to assert the constitutional claims of a third party, plaintiff must demonstrate: (1) that he suffered an injury, (2) a close relationship between plaintiff and the third party who possessed the rights, and (3) "some hindrance to the third party's ability to protect his or her own interests." Campbell v. Louisiana, 523 U.S. 392, 397, 118 S. Ct. 1419 (1998)); accord Powers v. Ohio, 499 U.S. 400, 410-11 (1991); Aid for Women v. Foulston, 441 F.3d 1101, 1111-12

(10th Cir. 2006). Though third-party standing is generally disfavored, the Supreme Court has been "quite forgiving with these criteria in certain circumstances," such as "[w]ithin the context of the First Amendment." Kowalski v. Tesmer, 543 U.S. 125, 129-30, 125 S. Ct. 564 (2004) (internal quotation marks omitted).

The only injury suffered by plaintiff was the loss of income from a position he was offered yet prevented from accepting because of defendants' alleged actions. The court doubts that plaintiff can prove this claim, but for purposes only of the motion, it finds that the first element has been satisfied, albeit barely. The second element is also met because there does not seem to be a dispute that Rankins is plaintiff's daughter. Defendants argue that the third element is not met because "there is no hindrance or inability for Ms. Rankins to pursue any constitutional claims she [may] have concerning the denial of her application for visitation." (Doc. 36 at 13). There is no evidence that Rankins would have a sustainable cause of action against any of the defendants. Rankins may have been declined one visit with defendant but she has suffered no economic damages as a result and apparently has since been granted or has not pursued visitor status. Therefore, Rankins would lack incentive to bring a claim to protect her rights. See Camacho v. Brandon, 317 F.3d 153, 159-61 (2d Cir. 2003)(plaintiff city council employee had third-party standing to assert First Amendment rights of city councilman for whom he worked because plaintiff was fired as a result of councilman's vote, plaintiff and councilman had close working relationship, and councilman could not assert his own rights because he had suffered no injury-in-fact from his First Amendment activity).

Accordingly, it appears that plaintiff may be able to establish a First Amendment violation. However, when faced with a motion for summary judgment on the basis of qualified immunity, plaintiff bears the additional burden of demonstrating that the right allegedly violated was "clearly established" at the time the conduct occurred. Pearson v. Callahan, 129 S. Ct. 808, 815, 172 L. Ed.2d 565 (2009).

### 2. Clearly Established

To satisfy the "clearly established" prong, the rights at issue must have been sufficiently clear that defendants would have understood that their conduct violated a constitutional right that was clearly established at the time the alleged acts took place. See Cruz v. City of Laramie, 239 F.3d 1183, 1187 (10th Cir. 2001); Watson v. University of Utah Med. Ctr., 75 F.3d 569, 577 (10th Cir. 1996). This standard must be used in a particularized manner[3] because "[o]n a very general level, all constitutional rights are clearly established." Horstkoetter v. Dept. of Public Safety, 159 F.3d 1265, 1278 (10th Cir. 1998). Were this level of particularity not required, Harlowe "would be transformed from a guarantee of immunity into a rule of pleading," that would "destroy 'the balance that [Supreme Court] cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties.'" Anderson v. Creighton, 483 U.S. 635, 639-40, 107 S. Ct. 3034 (1987)(quoting Davis v. Scherer, 468 U.S. 183, 195 (1984)).

---

[3] The Tenth Circuit "has held that for a right to be 'particularized,' there must ordinarily be a Supreme Court or Tenth Circuit decision on point, or 'clearly established weight of authority' from other courts." Wilson v. Meeks, 52 F.3d 1547, 1552 (10th Cir. 1995); see also Cruz v. City of Laramie, 239 F.3d 1183, 1187 (10th Cir. 2001).

After a review of Supreme Court and Tenth Circuit authority[4], the court was unable to find a decision which held that a denial of work opportunity to a prisoner on the basis of the exercise of First Amendment rights by a family member or close friend constituted a violation of the prisoner's rights. The single authority cited by plaintiff simply stands for the proposition that a prisoner has no property interest in a job. Ingram v. Papalia, 804 F.2d 595, 596 (10th Cir. 1986). Therefore, the court cannot find that the right at issue here was sufficiently clear that defendants would have understood that their conduct violated plaintiff's rights. Defendants' motion for summary judgment on these claims is therefore granted.

**C. Retaliation Due to Attempted Transfer (Count 2) and Cell Transfer (Count 8)**

In count 2, plaintiff alleges that defendant Marlett retaliated against him by attempting to transfer him to another facility. Plaintiff, however, fails to establish this claim as there is no evidence of Marlett's transfer attempt due to plaintiff's grievances. Moreover, plaintiff has failed to establish that he suffered any injury due to this attempted transfer. Defendant Marlett's motion for summary judgment on this claim is granted.

In his last claim, plaintiff alleges that Marlett and Malott transferred him to a different cell in retaliation for filing grievances. Although plaintiff has no right to any particular cell assignment, prison officials cannot punish plaintiff for exercising

---

[4] The court also reviewed authority from other circuits and was unable to find a decision relevant to this case.

his first amendment rights by transferring him from one cell to another. Frazier v. Dubois, 922 F.2d 560, 561-62 (10th Cir. 1990) (although prisoner has no right to remain in any particular prison, prison officials cannot punish him for exercising his first amendment rights by transferring him to another prison). Plaintiff, however, cannot establish that his transfer was initiated due to his grievances. The undisputed facts show that plaintiff requested to be moved due to his allergies. Defendants followed through on plaintiff's request and moved him. Clearly, defendants' actions were initiated by plaintiff's request and not in retaliation. The fact that plaintiff did not get moved to his preferred location does not support a finding of retaliation. Fogle v. Pierson, 435 F.3d 1252, 1264 (10th Cir. 2006)(prisoner must allege specific facts which show retaliation).

Defendants' motion for summary judgment on this claim is granted.

**V. Conclusion**

Defendants' motion for summary judgment is granted.

A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed 3 double-spaced pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp, 810 F. Supp. 1172, 1174 (1992). The response to any motion for reconsideration shall not exceed 3 double-spaced pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this __19th__ day of June 2013, at Wichita, Kansas.

s/ Monti Belot

Monti L. Belot
                                    UNITED STATES DISTRICT JUDGE